**John WHOLEY, Plaintiff,**

v.

**Kathleen TYRELL and Paula Delaney, Defendants.**

**Civil Action No. 07–11927–JLT.**

United States District Court,
D. Massachusetts.

July 28, 2008.

John J. Davis, Adam Simms, Pierce, Davis & Perritano, LLP, Boston, MA, James B. Lampke, Hingham, MA, for Defendants.

David C. Grossack, Law Office of David Grossack, P.C., Newton, MA, for Plaintiff.

## MEMORANDUM

TAURO, District Judge.

Before this court are Plaintiff's *Motion for a Preliminary Injunction* [# 2], and Defendants' *Motion to Dismiss* [# 9]. For the reasons stated below, this court DENIES Plaintiff's *Motion for a Preliminary Injunction*, and GRANTS Defendants' *Motion to Dismiss*.

## I. FACTUAL BACKGROUND

Plaintiff John Wholey claims that his constitutional and statutory rights were violated when Superintendents of the Hull Schools restricted his access to certain school properties. Plaintiff is a special needs instructor. Defendant Paula Delaney was the Superintendent of Hull Schools until some time in 2007.[1] Defendant Kathleen Tyrell replaced Defendant Delaney as Superintendent at some point in 2007.[2]

Plaintiff has a long history of involvement with the Hull School Department.[3] In 2003, he applied for several positions as the basketball coach at Hull High School.[4] He was not selected for three positions, but was selected to coach the freshman boys team.[5] After that team was eliminated due to fiscal concerns, Plaintiff filed a complaint with the Massachusetts Commission Against Discrimination ("the Commission") alleging retaliation and age discrimination.[6] The Commission, however, recommended "a lack of probable cause"

---

1. It is unclear from the submissions when Delaney stepped down as Superintendent. She did, however, send a letter to Plaintiff, dated January 23, 2007. *See* Notification of Restriction from Property, January 23, 2007, Ex. C. to Pl.'s Mem. in Supp. of Emergency Mot. for Prelim. Inj. [# 3].

2. *See, e.g.,* Notification of Restriction from Property, August 23, 2007, Ex. B. to Pl's Mem. in Supp. of Emergency Mot. for Prelim. Inj. [# 3]. Defendant Tyrell signed this Notification, indicating she was Superintendent by August 2007.

3. *See* Memorandum: Recommendation for Dismissal of the Complaint, Ex. A., 3[# 15]. Plaintiff adverted to the results of the Commission investigation in his Complaint. Accordingly, this court may consider "documents sufficiently referred to in the complaint." *Watterson v. Page,* 987 F.2d 1, 3 (1st Cir.1993).

4. Memorandum: Recommendation for Dismissal of the Complaint, 3.

5. *Id.*

6. *Id.*

finding for Plaintiff's allegations.[7] It further found that the Plaintiff's "assertion that the 9th grade program was eliminated to deprive him employment is implausible at best."[8] Plaintiff appealed the Commission's decision, which was affirmed on appeal in 2005.[9]

Plaintiff has also been "active in raising issues related to handicap access, racial sensitivity, gender equality, and financial irregularities in the Hull schools."[10] In September 2005, Plaintiff filed a complaint with the Office of Civil Rights, United States Department of Education.[11] He alleged that "the Hull School System was not providing equal benefits to girls athletic team as to the boys [sic]" and "that seating accommodations were not accessible to mobility impaired persons at high school football games."[12] As a result of the complaint, Plaintiff alleges that the Town of Hull had "was required to remedy the deficiency."[13]

In addition, Plaintiff, as an elected member of the Hull School Committee, also raised issues about school expenditures and administration.[14] He also allegedly "exposed nepotism and financial abuses in the High School, the hiring of unqualified persons and the handling of funds from the school's vending machines."[15]

On September 25, 2006, Plaintiff attended a meeting of the Hull School Committee concerning the hockey team budget.[16] At the meeting, Plaintiff attempted to speak with Joseph Sullivan, the Athletic Director.[17] Plaintiff alleges that "Sullivan acted belligerently towards the plaintiff and . . . contacted the Hull Police who sent an officer to the plaintiff's home and warned him to keep away from Sullivan."[18]

On September 27, 2006, Plaintiff again "encountered" Sullivan at a high school field hockey game.[19] Plaintiff alleges he merely asked to "speak with" Sullivan, and that "there was no physical contact or violence of any kind."[20] Yet the "police again warned [Plaintiff] to keep away from Sullivan."[21]

On September 28, 2006, Defendant Delaney sent Plaintiff a "Notification of Temporary Restriction from Property" ("Temporary Restriction").[22] The Temporary

---

7. *Id.*

8. *Id.*

9. *See* Untitled Affirmation of Finding of Lack of Probable Cause, Ex. A., 1[# 15].

10. Compl. ¶ IV.

11. *Id.* at ¶ VII.

12. *Id.*

13. *Id.*

14. *Id.* at ¶¶ IX–X.

15. *Id.* at ¶ XI.

16. *Id.* at ¶ XVI.

17. *Id.*

18. *Id.* at ¶ XVII.

19. *Id.* at ¶ XVIII.

20. *Id.*

21. *Id.* at ¶ XIX.

22. Notification of Temporary Restriction from Property, Ex. A to Pl.'s Mem. in Supp. of Emergency Mot. for Prelim. Inj. ("Temporary Restriction") [# 3]. The Temporary Restriction was not included in the Complaint, but instead attached to Plaintiff's Mem. in Supp. of Emergency Mot. for Prelim. Inj. This court finds that both the Temporary Restriction and the subsequent Restriction fall within the exceptions articulated by the First Circuit in *Watterson*, 987 F.2d at 3 (permitting courts, on a motion to dismiss, to consider documents the authenticity of which are not disputed by the parties, documents central to plaintiff's claim, or documents sufficiently referred to in the complaint). Accordingly, this court shall consider both Restrictions in the *Motion to Dismiss.*

Restriction referenced the events of September 25 and September 27, and informed Plaintiff that his "interaction with Mr. Sullivan is not acceptable behavior on [School] Department property and possesses [sic] a threat to the security of the Department property and personnel."[23] It specified three areas that Plaintiff could not enter: the Hull High School, the L Street Playground fields, and any school department property where Plaintiff was "aware or should be aware of the presence of Joseph Sullivan."[24]

In the Temporary Restriction, Defendant Delaney made clear to Plaintiff that "we wish to meet with you to review this matter. Please contact my office and advise as to several dates and times you are available so that we may set up this meeting."[25] The Temporary Restriction further provided that, "Should you have need to enter upon such property from which you are prohibited, arrangements for access must be made in advance and are subject to approval by contacting this office."[26] Finally, the Temporary Restriction stated "Should you or your attorney have any questions or wish to discuss this Notification, please contact James B. Lampke, Esq., Town Counsel.... You or your attorney may of course contact this office as indicated above to advise as to dates and times you are available for a meeting."[27]

On August 23, 2007, Defendant Tyrell— Delaney's replacement as Superintendent of Hull Schools—sent Plaintiff a "Notification of Restriction from Property"[28] ("Restriction"). The Restriction recited the events of September 2006, and noted that "the School Department felt [Plaintiff's conduct] presented a disruption to the school operation and threat to property, personnel and students."[29] It also recounted a December 11, 2006 meeting between Plaintiff and the School Department wherein Plaintiff "agreed, in the future, to moderate [his] behavior in an effort to address the School Department's concerns regarding safety and disruptions."[30] In addition, the Restriction describes two incidents—on June 23, 2007 and July 23, 2007—where Plaintiff was allegedly seen on school property, in violation of the school's previous restriction.[31] Moreover, despite the Town's offer to meet with Plaintiff to hear his version of the events, Plaintiff allegedly failed to provide information about the two incidents.[32] Consequently, Defendant Tyrell maintained the three place restrictions initially set forth in the Temporary Restriction.[33]

On October 11, 2007, Plaintiff filed the instant action and moved for a preliminary injunction. He advances four causes of action: (1) violation of 42 U.S.C. § 1983; (2) violation of Title IX of 20 U.S.C. § 1681; (3) intentional infliction of emotional distress; and (4) equitable relief in

23. Temporary Restriction.

24. *Id.*

25. *Id.*

26. *Id.*

27. *Id.*

28. Notification of Restriction from Property, Ex. B to Pl.'s Mem. in Supp. of Emergency Mot. for Prelim. Inj. ("Restriction") [# 3].

29. *Id.* at 1.

30. *Id.*

31. *Id.* at 2.

32. *Id.*

33. *Id.*

the form of enjoining Defendants from enforcing the restriction notices.

## II. DISCUSSION

### A. Defendants' *Motion to Dismiss*

#### 1. Legal Standard on a Motion to Dismiss

In evaluating a motion to dismiss, this court must take all well-pled facts in the light most favorable to the Plaintiff, resolving all reasonable inferences in his favor.[34] This court need not, however, credit "bald assertions, ... unsubstantiated conclusions, ... subjective characterizations, ... or problematic suppositions."[35]

Courts are ordinarily forbidden from considering documents not attached to the complaint.[36] Yet in certain circumstances, unattached documents may come within the court's purview, including "documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint."[37] This court finds the restriction notices are central to the plaintiff's claim and not disputed by the parties. Moreover, Plaintiff's complaint does specifically reference "the No Trespass orders against the plaintiff affixed herein as Exhibits to this complaint."[38] But Plaintiff failed to affix the restrictions to the complaint, instead submitting them as attachments to his *Motion for a Preliminary Injunction* [# 2]. In light of the undisputed importance of the restriction notices, this court reads them as part of the complaint.

#### 2. Capacity

Plaintiff's complaint fails to indicate whether he is suing the Defendants in their official or individual capacities.[39] Indeed, when asked during oral argument under which capacity Plaintiff filed suit, Plaintiff's counsel admitted that "the distinction between individual and official capacity is actually ... lost on me."[40] Thereafter, concerned that "apparently one way or another I walk into a trap," Plaintiff's counsel indicated that he was suing Defendants in their official and individual capacity.[41]

In such situations, the First Circuit has directed lower courts to examine "the substance of the pleadings and the course of proceedings to determine whether the suit is for individual or official liability."[42] Looking at Plaintiff's complaint and motion for preliminary injunction, it is clear that he is suing Defendants in their individual capacities. On the record before this court, there is no suggestion that the Defendants issued the restrictions as part of a government policy or custom, the sine qua non of official liability. As the Supreme Court has held,

---

34. *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir.2008).

35. *Id.* at 305 (citations omitted).

36. *Watterson*, 987 F.2d at 3.

37. *Id.*

38. Compl. XLI.

39. The First Circuit has frowned upon such omissions. "[W]e do not encourage the filing of complaints which do not clearly specify that a defendant is sued in an individual ca-

pacity. To the contrary, it is a far better practice for the allegations in the complaint to be specific. A plaintiff who leaves the issue murky in the complaint runs considerable risks...." *Powell v. Alexander*, 391 F.3d 1, 22 (1st Cir.2004).

40. Mot. Hr'g Tr. 19:25–20:2, June 10, 2008.

41. *Id.* at 20:12.

42. *Powell*, 391 F.3d at 22 (citation omitted).

a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.[43]

Since Plaintiff makes no mention of a policy or custom in connection with the restrictions, his claim against Defendants in their official capacity must fail.

This court consequently reads Plaintiff's claims against Defendants in their individual capacities. Plaintiff alleges that Defendants Tyrell and Delaney violated three of his constitutional rights: his First Amendment right to free speech, Ninth Amendment right to travel, and Fourteenth Amendment right to due process.[44] Plaintiff also alleges a violation of 20 U.S.C. § 1682 and 34 C.F.R. § 100.7(e).[45] But as this court explains below, Defendants have committed neither constitutional nor statutory violations. Consequently, Plaintiff's statutory and constitutional claims must fail.[46]

### 3. Constitutional Claims

#### A. First Amendment

■ Plaintiff alleges that he enjoys an "absolute, unequivocal right guaranteed by the First Amendment ... to speak to school officials, to communicate complaints to regulatory authorities and others ... and to seek redress of his grievances through appropriate and lawful forums."[47] But as the First Circuit instructs, "the prophylaxis of the First Amendment is not without limits. Reasonable restrictions as to the time, place, and manner of speech in public fora are permissible, provided that those restrictions 'are justified without reference to the content of the regulated speech, ... are narrowly tailored to serve a significant governmental interest, and ... leave open ample alternative channels for communication of the information.'"[48]

■ Plaintiff alleges no facts that implicate his First Amendment rights. Defendants have imposed *circumscribed* restrictions on Plaintiff, prohibiting him from visiting (1) the Hull High School; (2) the L Street playground fields "during the times that any Town of Hull School Department athletic program is using the field;" and (3) town property "when any Town of Hull School Department athletic program is using the property."[49] These are narrowly tailored place restrictions designed to ensure that Plaintiff avoids contact with Athletic Director Joseph Sullivan. They say nothing about the content of Plaintiff's speech, nor do they impinge on his ability "to speak to school officials" or "to communicate complaints to regulatory authorities."[50] Rather, they repeatedly aim to resolve the underlying dispute.

---

**43.** *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

**44.** *See* Compl. ¶¶ XXII, XXVI; Mem. in Supp. of Emergency Mot. for Prelim. Inj. 4.

**45.** *See* Compl. ¶¶ XXIX–XXXIV.

**46.** Defendants have also suggested that they are entitled to qualified immunity. But since this court finds neither a constitutional nor a statutory violation, it need go no further in analyzing the issue of qualified immunity.

**47.** Compl. ¶ XXII.

**48.** *Bl(a)ck Tea Soc'y v. City of Boston*, 378 F.3d 8, 12 (1st Cir.2004) (citations omitted).

**49.** Restriction, 2.

**50.** Compl. ¶ XXII.

Moreover, the restrictions advance a significant governmental interest. There were two incidents in which Plaintiff "encountered" Joseph Sullivan: once after a Hull School Committee meeting concerning the hockey budget, and another on the field hockey field. Both encounters resulted in warnings by the Hull Police that Plaintiff should avoid Sullivan. Moreover, the School Department expressed concern that the disruption may pose a "threat to property, personnel, and students." [51] The Defendants owe a duty of care to their employees, such as Joseph Sullivan, as well as to students involved in athletic events. Even if Plaintiff did not engage in "physical contact or violence" with Sullivan, the Defendants nevertheless determined that he posed a threat to the public safety. Prudent administrators need not wait for a physical altercation to implement a reasonable prophylactic measure. That is exactly what happened here.

Finally, the restrictions have left open "ample alternative channels of communication." As noted above, the restrictions repeatedly encouraged Plaintiff to call the School in order to set up times to discuss the underlying issues and "provide evidence of the steps [Plaintiff has] taken to address [his] conduct on school property." [52] A meeting held in December 2006 suggests that Plaintiff did, in fact, avail himself of these opportunities. Moreover, the restrictions also conditionally allow him to visit the properties, provided he made arrangements to do so beforehand.

### B. Ninth Amendment

Plaintiff's Ninth Amendment claim fails as a matter of course. The text of the Constitution simply states that, "The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage other retained by the people." Plaintiff has not cited applicable case law that construes this constitutional language into a right to travel. Nor has he offered a plausible legal theory as to how Defendants have violated his Ninth Amendment rights. Accordingly, this court does not find Defendants violated Plaintiff's Ninth Amendment rights.

### C. Due Process Claims

■ Plaintiff's Fourteenth Amendment claims likewise fail. [53] Plaintiff alleges that the School's restrictions amount to "punishment ... that ... shocks the conscience by conferring an unjustified criminal punishment of an excessive and disproportionate nature upon the plaintiff ... before any kind of a notice to be heard was sent to the plaintiff." [54] As such, Plaintiff alleges that the restrictions violate his rights to procedural and substantive due process.

#### i. Procedural Due Process

■ To establish a procedural due process violation, Plaintiff must allege (1) that he has a property or liberty interest as defined by state law, and (2) the Defendants, acting under color of state law, deprived him of that interest without constitutionally adequate process. [55]

Construing all reasonable inferences in his favor, it is probable that Plaintiff satisfies the first part of the test, citing his "natural right to travel upon public proper-

---

51. Restriction, 1.

52. *Id.*

53. Plaintiff also advances a Fifth Amendment claim. But since no federal action is at issue here, this court focuses on the alleged violations of the Fourteenth Amendment.

54. Compl. XXVII.

55. *PFZ Properties, Inc. v. Rodriguez*, 928 F.2d 28, 30 (1st Cir.1991).

ty in his own community." [56] But he has made no showing that Defendants deprived him of that interest without adequate process. As the First Circuit has held, procedural due process requires "notice and an opportunity to be heard." [57]

Defendants provided Plaintiff with both. Defendants sent Plaintiff the Temporary Restriction and Restriction. The restrictions cited the reasons why the School was limiting Plaintiff's access to certain school properties, and the specific properties from which he was barred. The restrictions also requested Plaintiff to contact the School to set up a meeting to discuss resolutions to the problem. Indeed, Plaintiff met with the Town in December 2006, at which time various matters were discussed. Based on this discussion and Plaintiff's subsequent behavior, the School decided to maintain its restrictions. That may not have been the result Plaintiff sought, but the Defendants clearly discharged their duties to provide notice and an opportunity to be heard.

### ii. Substantive Due Process

 To establish a substantive due process violation, Plaintiff must allege an abuse of power so egregious that it "shocks the conscience." [58] This is a high standard, and one rarely met. The Supreme Court did, however, find the forced pumping of a suspect's stomach sufficiently horrendous so as to shock the conscience. [59]

Plaintiff, by contrast, has alleged nothing at this level. In response to a couple of heated incidents involving Plaintiff and a member of the School Department, Defendant Delaney issued a temporary restriction on certain school properties. After meeting with Plaintiff, and after Plaintiff apparently violated the Temporary Restriction on two separate occasions, Defendant Tyrell made permanent the earlier restriction. These measured responses hardly rise to the level of conscience-shocking. Accordingly, Plaintiff's substantive due process claim must also fail.

### 4. Statutory Claim

To make out a retaliation claim under Title IX of 20 U.S.C. § 1681, Plaintiff must allege facts sufficient to show (1) he engaged in activity protected by Title IX, (2) the alleged retaliator knew of the protected activity, (3) the alleged retaliator subsequently undertook some action disadvantageous to the actor, and (4) a retaliatory motive played a substantial part in prompting the adverse action. [60]

 Plaintiff's retaliation claim founders on the second and fourth element. First, there is no factual basis to show that either Superintendent was aware of the Plaintiff's September 2005 complaint to the U.S. Department of Education. Plaintiff complains that he is "known by the defendants as a whistle blower on issues related to gender equality in sports," but that is a

---

**56.** Compl. XXVI.

**57.** *Mard v. Town of Amherst*, 350 F.3d 184, 189 (1st Cir.2003) (citation omitted).

**58.** *County of Sacramento v. Lewis*, 523 U.S. 833, 846, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998).

**59.** *Rochin v. California*, 342 U.S. 165, 172, 72 S.Ct. 205, 96 L.Ed. 183 (1952) ("Illegally breaking into the privacy of the petitioner, the struggle to open his mouth and remove what

was there, the forcible extraction of his stomach's contents—this course of proceeding by agents of government to obtain evidence is bound to offend even hardened sensibilities. They are methods too close to the rack and the screw to permit of constitutional differentiation.")

**60.** *Frazier v. Fairhaven Sch. Comm.*, 276 F.3d 52, 67 (1st Cir.2002).

legal conclusion, not a factual averment. Without some kind of proof that either Delaney or Tyrell knew of Plaintiff's complaint, he fails to satisfy the second element.

Moreover, the School Department's restrictions were motivated by concern over Plaintiff's interactions with Athletic Director Sullivan, and not with retaliation. In the Temporary Restriction, Defendant Delaney specifically noted that Plaintiff's behavior toward Sullivan was "not acceptable on Department property" and posed "a threat to the security of the Department property and personnel." Despite being banned from school properties, Plaintiff violated the Temporary Restriction by entering the L Street Playground on June 23, 2007, and the High School on July 23, 2007. This led to the issuance of the permanent Restriction in August 2007. Based on the factual record before this court, there is no indication that retaliation played a substantial role in the issuing of the restrictions. The School has an obligation to safeguard the health of its employees and students, and implemented narrowly tailored restrictions to effectuate this important goal.

### 5. Intentional Infliction of Emotional Distress

This court declines to exercise supplemental jurisdiction over Plaintiff's state law tort claim.

### B. Plaintiff's *Motion for Preliminary Injunction*

■ A plaintiff seeking a preliminary injunction must show (1) he has a substantial likelihood of success on the merits; (2) he faces a significant potential for irreparable harm in the absence of immediate relief; (3) the issuance of the injunction will not harm the defendant more than the absence of the injunction will harm the plaintiff; and (4) the granting of injunctive relief will not denigrate the public interest.[61]

The above analysis makes clear that Plaintiff does not have a likelihood of prevailing on the merits. Since this element is the "sine qua non of preliminary injunctive relief," this court need go no further. Plaintiff's *Motion for a Preliminary Injunction* is hereby DENIED.

## III. CONCLUSION

For all of the foregoing reasons, this court GRANTS Defendants' *Motion to Dismiss*, and DENIES Plaintiff's *Motion for a Preliminary Injunction*. Plaintiff's federal claims are dismissed with prejudice, and his state claims are denied without prejudice.

An Order shall issue.

### ORDER

After considering the relevant submissions, this court hereby orders:

1. Plaintiff's *Motion for a Preliminary Injunction* [# 2] is DENIED.

2. Defendants' *Motion to Dismiss* [# 9] is GRANTED.

IT IS SO ORDERED.

---

61. *McGuire v. Reilly,* 260 F.3d 36, 42 (1st Cir.2001).